## VALIDITY OF ACT AUTHORIZING REPAIR OF DAMAGES FROM FLOODS.

Common Pleas Court of Hamilton County.

SAMUEL ASSUR, A TAX-PAYER, ETC., V. THE
CITY OF CINCINNATI ET AL. *

Decided, May 5, 1913.

*Constitutional Law—Uniformity of Operation of General Laws and Temporary General Legislation—To Determine the Circumstances Under Which a Law May be Carried Into Effect is a Proper Exercise of Judicial Power—103 O. L., 141.*

1. An act of the General Assembly which operates uniformly upon all counties, municipal corporations and political subdivisions throughout the state in the same condition or category, is within the constitutional requirement in that respect.
2. The act authorizing the temporary repair of public ways and property, destroyed or injured by the floods occurring in March and April, 1913 (103 O. L., 141; and as re-enacted for the purpose of correcting typographical errors, 103 O. L., 760), falls within the Ohio rule as to uniformity of operation.
3. The provision of this act, that in cases of the expenditure of $500 or more the court of common pleas must determine the necessity of such expenditure, is not a conferring of legislative power upon the courts, but is a provision for the exercise of judicial power.

*J. L. Kohl* and *Samuel Assur*, for plaintiff.
*Alfred Bettman*, City Solicitor, contra.

GEOGHEGAN, J.

The question herein involved is the constitutionality of an act of the General Assembly passed April 10, 1913, approved April 12, 1913, and known as House Bill No. 640, entitled, ''An Act to authorize county commissioners, township trustees, boards of education, road commissioners, councils of municipal corporations and boards and officers thereof temporarily to repair, reconstruct and replace public property and public ways destroyed

* Affirmed by the Court of Appeals without opinion; judgment of the Court of Appeals affirmed by the Supreme Court, *Assur* v. *Cincinnati*, 88 Ohio State.

or injured by floods occurring in March and April, 1913; to authorize county commissioners and councils of municipal corporations to borrow and expend money for the purpose of cleansing public places and private grounds and buildings and removing therefrom any matter deposited therein by such floods, which is inimical to the public health, safety or convenience; and to exempt proceedings for the permanent repair, reconstruction and replacement of such public property and public ways, and bonds issued and levies made for such purposes, from certain requirements and limitations.''

The amended petition after setting forth the demand of plaintiff on the city solicitor to bring appropriate proceedings to restrain the said city of Cincinnati and its auditor from receiving bids or offering for sale a certain issue of bonds in the sum of $125,000, which bonds were authorized by an ordinance of the city of Cincinnati, designated as Ordinance No. 201, for the reason that said ordinance is unconstitutional, invalid and void, and that the proceeds of the sale of said bonds, if applied to the uses provided for in said ordinance, would constitute a misapplication of public moneys by the city of Cincinnati, goes on to recite that the said city solicitor refused to comply with said demand and that therefore plaintiff brings a suit as a tax-payer for and on behalf of the city of Cincinnati, to enjoin said city and its auditor from proceeding to sell said bonds under said ordinance. He attaches a copy of the ordinance, marked ''Exhibit A,'' and also a copy of the act of the General Assembly referred to above, marked ''Exhibit B'' and states that the ordinance is unconstitutional, invalid and void.

To this amended petition the city of Cincinnati filed a demurrer, and this matter is submitted upon said demurrer. It is conceded that the ordinance complained of is regular in form and was legally passed, and that its validity depends entirely upon the constitutionality of the act of the General Assembly; that if the act is constitutional the ordinance is valid and constitutional.

The points raised as to the constitutionality of the act are:

1. That the act is in conflict with and repugnant to Section 1, Article XIII, and Section 26, Article II, of the Constitution.

2.   That the General Assembly violated its powers when it attempted to confer in Section 2 of said act, jurisdiction on the court of common pleas to determine the necessity of any contract made under the provisions of this act involving an expenditure in excess of $500, by providing that the public officers having the matter in control should apply to a court of common pleas or a judge thereof, in the county wherein the work under said contract was to be performed, to determine its necessity, its nature, etc.; and

3.   That the Legislature exceeded its constitutional authority in providing for the cleansing of private grounds where had accumulated because of the flood, debris, etc., inimical to public health.

As to the first proposition, it is said that this is a special act conferring corporate powers, and that it has not uniform operation throughout the state and therefore is in contravention of the articles of the Constitution above referred to.   That the powers conferred herein are corporate powers will admit of no doubt. The act authorizes the issue of bonds and the levy of a tax to pay therefor, for the purpose of temporarily repairing, reconstructing and replacing certain public property and for permanently replacing and repairing certain other public property for other purposes set forth in the act.   The right to levy a tax conferred upon a municipal corporation is the conferring of a right to exercise a corporate power.  *State, ex rel,* v. *Cincinnati,* 20 Ohio St., 18; *State* v. *Pugh,* 43 Ohio St., 98; *Railway* v. *Martin, Treas.,* 53 Ohio St., 386.

The question then arises, is this act a special act, and if not, does it have uniform operation throughout the state?   I think the act is a general act; there is no attempt to confine its operation to any particular or special locality; that is, to confine its operation to a particular or special locality carved out of a general class.  While it may be said its operation is purely temporary, it is well recognized that there may be temporary general legislation.   In order to determine the generality of an act we must look to the subject of the act itself.   If its subject is general, then the act is general.   It will be observed here that the act in question

is for the repair, reconstruction of properties, public ways, public grounds, the cleaning of public and *private* grounds, and in certain instances the permanent repair of public roads.    This is a subject of general legislation and clearly comes within the purview of the rule laid down in *Platt* v. *Craig,* 66 Ohio St., 75, where the Supreme Court clearly defines the distinction between special and general acts, holding that an act which is general in its application, that is common to many or the greatest number; widely spread; prevalent; co-extensive, though not universal, is a general act.

And in *State, ex rel,* v. *Commissioners,* 54 Ohio St., 333, at page 343, the Supreme Court through Judge Minshall, says:

"The location and construction of public roads is a subject of a general nature, and should, therefore, be regulated by general laws, uniform in operation throughout the state."

Certainly if the location and construction of the public roads is in its nature general, then the repair, reconstruction and replacement of public roads must of necessity be general.

That there may be temporary general legislation, and that legislation because it is temporary does not of necessity make it special, is well laid down in *Railway Co.* v. *Horslman,* 72 Ohio St., 93, the second syllabus being:

"A temporary act may be either general or special; and an act of a general nature which operates uniformly throughout the state and upon every individual corporation of the classes therein defined, but which is by its terms limited in operation to a specified period of time is a temporary general statute."

The conclusion, therefore, is inevitable that this statute is general in its nature, though it may be temporary in its operation. The question then is: Does it operate uniformly throughout the state? There is no intimation that it does not do so, either in the act itself, or to be adduced from those facts of which the court may take judicial notice.    It may be that there are some counties and other divisions not affected by the floods referred to in the act, but this does not appear either upon the face of the act or from any other fact before the court of which the court may take notice.

It will be observed that the act itself does not limit its operation to any particular or special county, municipality or other political subdivision of the state.   It does not on its face exclude any such from the operation of the act, nor does it appear that the passage of the act itself is an attempt to evade the constitutional limitations which we are considering,   There may be places not affected by the floods, but that question has not been determined or attempted to be determined by the Legislature.   The act applies to any and all counties of the state in so far as we can determine from the act itself, and the question as to whether any particular county, municipality or political subdivision comes within the limits of the act is dependent on matter entirely outside of the act itself, and left to the discretion of the proper officials named in the act to determine whether or not the relief afforded by the act can be applied in their respective political subdivisions or municipalities.

In *State* v. *Nelson*, 52 Ohio St., 88, at page 102, the court uses this language:

"While a statute must stand or fall by its operation rather than by its mere form, yet in passing upon the constitutionality of a statute, a court can judge of its operation only through facts of which it can take judicial notice.   A court can not take testimony to determine the operation of a statute, and thereby declare it unconstitutional."

It is clear, therefore, that in order to determine this statute unconstitutional by reason of the fact that it is not of uniform operation throughout the state, the court must determine that the Legislature itself intended that this act should not apply to certain counties of the state in the same condition and in the same category, and attempted to pass an act, which on its face was general, for the purpose of affording particular relief to certain particular communities and excluding others.   We think the rule is that an act of the Legislature which operates uniformly throughout the state and upon all counties, municipal corporations and political subdivisions in the same condition or category, is constitutional.

This rule, we think, is clear from the later decisions, and will refer more especially to *Horstman* v. *Railway Co., supra; State,*

*ex rel,* v. *Spellmire,* 67 Ohio St., 77; *Platt* v. *Craig, supra; Gentsch* v. *State, ex rel,* 71 Ohio St., 151; *State, ex rel,* v. *Ferris,* 53 Ohio St., 314; *State* v. *Nelson,* 52 Ohio St., 88; *Zumstein* v. *Mullen,* 67 Ohio St., 382.

We would refer especially to the first syllabus in *Gentsch* v. *State, ex rel, supra,* which is as follows:

"Classification is often proper and sometimes necessary in legislation, in order to define the objects on which a general law is to take effect, and in order to definitely apply and effectuate the purposes of the legislation; but when classification is unnecessary, arbitrary, fictitious or otherwise faultily made and is used to evade the constitutional limitations under the form of general legislation, such legislation in relation to a class may be both special and unconstitutional."

Certainly there is no arbitrary, fictitious or faulty attempt made here to classify certain counties municipalities, or political subdivisions, but by the very language of the act itself, every and any and all such political subdivisions and municipal corporations affected by the purpose of the act itself, are included within its operation.

I am therefore forced to the conclusion that the act operates uniformly throughout the state upon all municipalities or political subdivisions in the same condition and category; that there has been no attempt on the part of the Legislature to pass an act in its terms general, but in its object special, in order to evade constitutional limitations. While it is true that there may be certain conditions in certain counties, municipalities and other political subdivisions which require the legislation that the act contemplates, and in others conditions may be such as not to require this legislation, nevertheless the question as to whether or not the legislation is required, is left entirely to the discretion of the public officers in charge of the works contemplated by the act, and no attempt is made by the Legislature to exclude any portion of the state from its operation. While the act may in a measure classify by limiting its operation to political subdivisions affected by the conditions of the flood, determination as to what municipalities or political subdivisions have been affected has not

been attempted by the Legislature, but left entirely to the respective administrative officers thereof.

I am of the opinion that both by reason and authority, the act under discussion is of that uniform operation throughout the state which the Constitution requires of such acts.

The point is made that the act confers legislative power upon the courts. In Section 2 of the act it is provided in substance that before any contract for any temporary repair, reconstruction or replacement, involving an expenditure of more that $500 is authorized or entered into, such commissioners and board of council shall apply to the common pleas court of the county in which any part of any such school district, road district and municipal corporation is located, or to any judge thereof, and the court or judge shall determine such application and whether such public necessity exists, etc.

It will be observed that this application must only apply to the question of temporary repairs and that under Section 3 of the act, providing that a resolution or ordinance passed by the courts named in the act providing for the issuance of notes or bonds shall state the facts bringing them within the terms of the act, and the recitals therein contained shall be conclusive evidence of the facts therein stated.

It is evident, therefore, that the Legislature did not intend to confer the power to determine the necessity for the issuance of bonds upon the courts, but simply provided that in cases of temporary repair the court should not determine the necessity of the issuance of the bonds, but that in each particular instance where the amount of contract would exceed $500. that a determination of the court as to the existence of the necessity for the special work for which the contract was made should be had prior to the entering into the contract.

The Legislature has the right to determine by what departments of the government any act or power shall be exercised. The legislative branch of the state government, when the Constitution does not distinctly define and distribute judicial powers and it is not clear whether an act is wholly the exercise of a legislative, executive or judicial power, may determine by what

department it shall be exercised, because the Legislature is the depository of the legislative power of the state, and in the absence of an express grant of a power by the Constitution it is within the power of the legislative department to determine the nature of that power. This rule was laid down in *Fairview* v. *Giffee,* 73 Ohio St., 183, and on page 188 the court lays down the distinction between the delegation of power to make a law and the delegation of the power to put it in due execution.

Quoting from Ranney, Judge, in the case of *Railway* v. *Commissioners,* 1 Ohio State, 87, the court say:

"But while this is so plain as to be admitted, we think it equally undeniable, that the complete exercise of legislative power by the General Assembly, does not necessarily require the act to so apply its provisions to the subject-matter, as to compel their employment without the intervening assent of other persons, or to prevent their taking effect, only upon the performance of conditions expressed in the law. * * *
"But because such discretion is given, are these, and all similar enactments, to be deemed imperfect and nugatory? It would take a bold man to affirm it. In what does this discretion consist. Certainly not in fixing the terms and conditions upon which the act may be performed, or the obligations thereupon attaching. These are all irrevocably prescribed by the Legislature, and whenever called into operation, conclusively govern every step taken. The law is, therefore, perfect, final, and decisive, in all its parts, and the discretion given only relates to its execution. It may be employed or not employed—if employed it rules throughout; if not employed it still remains the law, ready to be applied whenever the preliminary condition is performed. The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can not be done; to the latter no valid objection can be made."

Applying this principle, therefore, to the act herein under consideration, does it invoke the exercise by the court of common pleas of any powers other than judicial? I think not. The right to determine the question of the necessity of any of the things set down in the act is left entirely with the legislative

department of the various municipalities and it is for it to deter-
mine whether or not it will proceed under the provisions of the
statute.

Having determined to proceed and having determined the
necessity which is a legislative act, in order to put that legisla-
tive act into execution it must, under certain conditions, to-wit,
the expenditure of over $500, apply to the court of common pleas.
This I regard not as conferring on the court of common pleas the
right to determine what the law shall be, but simply to determine
when and under what circumstances the law shall be called into
execution. I think this is clearly a judicial power. The Legis-
lature, under necessity of relieving the inconvenience caused to
the public in the destruction of public ways, roads, buildings,
etc., in a great public calamity, was compelled to throw down the
ordinary limitations, that the Legislature in the exercise of its
discretion has placed upon the various taxing bodies, and to
allow these bodies to proceed to issue bonds and to levy taxes
without those formalities which are ordinarily regarded as safe-
guards around that power. It gave the right to determine the
necessity to the various public officers and bodies without inter-
ference or objection by any other of the departments of govern-
ment and simply provided that in case the expenditure should be
beyond a certain sum the court should not determine the right to
exercise legislative power, but only determine after the legislative
power had been exercised, whether or not it was being exercised
upon a proper subject-matter. This we think is clearly a judi-
cial power. *Zanesville* v. *Telegraph & Telephone Company*, 64
Ohio State, 67.

The objection is further offered that inasmuch as the act pro-
vides for the expenditure of money for the purpose of re-
moving from public places and private grounds or buildings any
obstructions or matter deposited therein by said floods, the pres-
ence of which is inimical to public health, safety or convenience,
that by reason of the fact that an expenditure is authorized for
the purpose of removing said obstructions or matter from private
grounds or buildings that this is the authorization of the expendi-
ture of public moneys for private purposes. There would be

some force, perhaps, in this objection if the Legislature in the act itself did not clearly define what matters or obstructions might be removed in confining the removal to such as were inimical to public health, safety or convenience. The Legislature has a right to enact legislation to preserve and protect the public health and comfort, and an act doing so falls directly within the police power of the state.

In the case of *Board of Health* v. *Greenville,* 86 Ohio State, 21, Judge Donahue says:

"This power includes anything which is reasonable and necessary to secure the peace, safety, health, morals and best interests of the public. It is now the settled law that the Legislature of the state possesses plenary power to deal with these subjects so long as it does not contravene the Constitution of the United States or infringe upon any right granted or secured thereby, or is not in direct conflict with any of the provisions of the Constitution of this state, and is not exercised in such an arbitrary and oppressive manner as to justify the interference of the courts to prevent wrong and oppression."

It is apparent that the object of this statute is the conservation and preservation of public health, safety and convenience, which might be interfered with by reason of the deposit of large amounts of debris and other unhealthful matter upon the public and private grounds of the various counties and municipalities within the state. To say that the police power of the state to remove nuisances is confined solely to the removal of the said nuisances from public grounds, would be such a confining of the police power as would perhaps, in most instances, defeat the very purposes of the power itself. It certainly can be reasonably assumed that there would be great inconvenience to public health, safety and convenience by reason of the noxious deposits of debris and other matter upon private ground by reason of a great calamity, and I think that the act in question, so far as relates to the removal of debris from private grounds and the expenditure of money therefor, clearly comes within the rule of the police power laid down by Judge Donahue. It is designed primarily to preserve sanitary conditions and to prevent incalculable mis-

chief to the health, comfort, safety and convenience of persons living adjacent to such places as have been affected by these floods.

I am therefore of the opinion that the act is in accordance with the Constitution of this state and is not repugnant thereto.

It has been called to my attention since this matter was submitted to me that there is a typographical error in Section 6 of the act, in referring to the code numbers of what is commonly known as the Smith law, and that the Legislature since the passage of the act herein referred to has repealed said Section 6 and amended it so that the difficulty caused by the typographical error will be obviated; however, if the Legislature has simply repealed and amended Section 6 of this act alone, it does not affect any other sections of the act nor the principles herein contained.

The demurrer will be sustained.